### HINE v. VANDERBEEK et al.

(Supreme Court, Appellate Division, First Department. December 31, 1900.)

1. MECHANICS' LIENS— SIGNATURE—AGENT'S AUTHORITY — EVIDENCE — SUFFICIENCY.

The evidence on foreclosure of a mechanic's lien showed that the corporation plaintiff was expressly authorized, among other things, to institute, compromise, and dismiss all legal proceedings, and to file mechanics' liens, and to engage and discharge all necessary assistants, and that it directed an attorney to prepare a new notice of lien as a substitute for a defective one previously filed. The attorney testified that he was instructed by the manager or the bookkeeper to file the lien, and that thereupon he verified the lien as agent and filed it. The bookkeeper testified that the manager, on leaving the city for a few days, told him to have the attorney make out the lien. The manager testified that on his return he was informed by the attorney that he had verified and filed a new notice of lien as a substitute for the defective one. *Held*, that a finding that the attorney was authorized by the manager to verify and file the new lien was sustained by the evidence.

2. SAME—AGREEMENT TO CANCEL—EVIDENCE—SUFFICIENCY.

In a foreclosure of a mechanic's lien, defendants pleaded that by a written agreement dated March 8, 1898, the time for payment of the sum for which the lien was filed was extended till after the building was finished, and also that prior to March 8, 1898, the plaintiff, by its manager, agreed that the lien in suit should be discharged, provided that the owner would convey the building to such manager for the benefit of creditors, which was done. The evidence showed the written agreement of March 8th, providing that the building should be conveyed to plaintiff's manager as trustee for creditors; the creditors to extend the time of payment of their claims till the completion of the building; the agreement not to be binding on any of them unless all signed. The evidence further showed that one of such creditors refused to sign; that the conveyance to the manager was made March 8th, in order to prevent judgment liens from attaching, at which time some of the signatures to the agreement had not been obtained. The owner of the building testified that the manager had never agreed to discharge plaintiff's lien, while the manager, who had bonded the lien, testified that he had several conversations with the owner in which he did so agree. *Held*, that the evidence sustained a finding that no agreement to cancel the lien was made.

Appeal from special term, New York county.

Action by George F. Hine, as receiver of the Adamant Manufacturing Company of America, against Samuel H. Vanderbeek and others. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

67 N.Y.S.—51

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGH-
LIN, PATTERSON, and O'BRIEN, JJ.

Payson Merrill, for appellants.

Henry H. Abbott, for respondent.

O'BRIEN, J.   The action was brought to foreclose a mechanic's
lien in favor of the Adamant Manufacturing Company of America,
filed January 25, 1898, for plaster delivered on or about November
16, 1897, and used in erecting a building upon property then owned
by the defendant Vanderbeek.   Prior to the commencement of the
action the lien was bonded by the defendants Goddard, Zimmerman,
and McEntyre.   The furnishing of the material, the reasonableness
of price, and nonpayment are admitted.   The original defenses were
that the lien was bad, for the reason that it was not verified by the
lienor or its agent, and that by a written agreement between the
parties dated March 8, 1898, still in force, the time for the payment
of the money for which the lien was filed was extended until after
the completion of the building.   On the trial the defendants were
allowed to amend the answer by claiming that prior to March 8,
1898, the Adamant Company agreed that any lien filed by it should
be vacated and discharged, provided the defendant Vanderbeek and
his wife conveyed the property to the defendant Goddard for the
benefit of creditors, which was done, and the company intended to
discharge the lien sued upon, as it did the prior notice for the same
claim, but omitted to do so by inadvertence.   Another defense pre-
sented at the trial was that subsequent to the written agreement of
March 8, 1898, the Adamant Company waived the requirement that
all creditors should sign such agreement before it became binding
upon it.   This latter defense, however, was withdrawn; and the
questions presented, therefore, are, as stated by the appellants: (1)
Whether the lien sued upon was invalid, by not being verified by
the lienor or its agent; and (2) whether the Adamant Company, for
a valuable consideration, agreed with the defendant Vanderbeek to
cancel and discharge its lien, and to postpone the time of payment
until the happening of events which have not, as yet, taken place.
These were both issues of fact, and it only remains for us to deter-
mine whether they were properly resolved in plaintiff's favor.   The
additional point raised as to the incompetency of evidence admitted
relating to the specific ratification by Mr. Goddard of the authority
of Mr. Abbott to file the lien as attorney might have been serious if
the right of Mr. Abbott to file the lien depended upon such ratifica-
tion.   We may, however, entirely disregard this testimony, as, no
doubt, the learned trial judge did, and determine the issue presented
by a consideration of whether the lien was filed pursuant to original
authority given Mr. Abbott prior to any ratification.

It appears that the principal office of the Adamant Company was
in the city of Syracuse, and that the defendant Goddard was its
manager and agent in New York City; and there is in evidence a
power of attorney from the company to him dated February 24, 1898,
after the lien was filed, but which he says was like the one he previ-
ously held, giving him power to demand and sue for any sums due

or hereafter to become due; "to institute, carry on, compromise, and discontinue any and all legal or equitable proceedings, and to file any and all mechanics' liens; to appear, make answer in, and defend all actions; and, among other things, to engage, hire, employ, and discharge any and all kinds of workmen, clerks, and assistants, for the transaction of business of the said New York office." Mr. Goddard had filed a lien for plaintiff in December, 1897, but the one here in question was filed January 25, 1898, by Mr. Henry H. Abbott, an attorney at law, who had acted for Mr. Goddard, at times, as attorney. Mr. Abbott testified that Mr. Goddard had told him of the lien filed in December, and sent him a copy, which he examined, and, as he concluded that it did not comply with the statute, he telephoned Mr. Goddard, who told him to prepare another and file it; that he prepared one, and the following day was told by Mr. Goddard or Mr. Harrington, his bookkeeper, that Mr. Goddard wished him to file the lien, and he thereupon signed it as agent and filed it. Mr. Harrington testified that Mr. Goddard told him to go down to Mr. Abbott and have the new lien made out, and he did so, Mr. Goddard then being away. Mr. Goddard's testimony, however, is that he had been to Nova Scotia, and when he returned "was told by Mr. Abbott that he had telephoned to the office and advised them that there was a defect in the lien that I had filed, * * * and he said he had filed a new one. I asked him who had verified it, and he said he did, and I told him he ought not to have done it. * * * I did nothing more in the matter. Mr. Abbott had not been retained in the case."

Upon the second question, as to whether the Adamant Company agreed on certain conditions to discharge its lien, the written agreement of March 8, 1898, was put in evidence. This agreement provided, in brief, that the property in question shall be conveyed to the defendant Goddard, to be held as trustee for the benefit of creditors; the creditors agreeing to extend the time of payment until the completion of the building in process of erection; the agreement, however, "not to be binding upon any of the undersigned until executed by all of the said creditors, as shown and set forth in the annexed affidavit." Among these latter is Orin D. Person, and the agreement does not bear his signature; and upon the trial it appeared that he was, as matter of fact, paid in full the amount of his claim, which was $653. Antonio Gerrussi, who signed the agreement and had a claim for $291, was also paid in full. All the claims aggregated $5,929. The property was conveyed to Mr. Goddard on March 8, 1898; the signers of the agreement, with the exception of the Adamant Company, canceling their liens. Defendant Vanderbeek testified that there never was any agreement prior to that of March 8th, but, on the contrary, Mr. Goddard, both before and after March 8th, refused to cancel the lien. Mr. Goddard's testimony is that he had a number of conversations prior to March 8th with Mr. Vanderbeek, and agreed that the company would release their lien upon conditions such as stated in the document, and, if Mr. Person would not sign, arrangement would be made to pay him. But he afterwards testified:

"I did not mean to say that I had a conversation under the agreement prior to the 8th of March, agreeing to release in spite of the Person lien. It was after the 8th of March. There may be some confusion in my testimony there."

Mr. Vanderbeek further stated that the agreement dated March 8th was not in fact signed by all the subscribers on that day, but the conveyance to Mr. Goddard was made at that time, for one reason, to prevent liens of judgments attaching to the property.

We think the evidence supports the conclusion reached by the judge at special term, that the lien was a valid and subsisting one, and therefore that the defendants were liable upon it and upon the bond. There is a direct conflict as to whether or not Mr. Goddard told Mr. Abbott to file the lien after the latter had prepared it in accordance with proposed changes. That Mr. Goddard had full power to engage the services of any one to assist him in the business of the Adamant Company appears from the general power of attorney presented in evidence, and which he testified was similar to that he had previously held. This question, therefore, is narrowed down to whether or not he did give Mr. Abbott authority to make the lien and file it. There is evidence that Mr. Goddard instructed Mr. Abbott to draw it up and file it, and there is no dispute that he at that time was away from the city. The bookkeeper testified that he was specially sent by Mr. Goddard to tell Mr. Abbott to file the lien. No other question as to the validity of the lien is urged, and therefore the conclusion reached that there was no defect in it was right.

As to the making of an agreement prior, on or before March 8, 1898, there is also sufficient evidence to support the finding that no such agreement was made. On its face the written instrument shows that all the creditors were to agree to its terms, or else it would not be binding, and it is not disputed that two of the creditors named did not stand by the agreement. One of these never signed it, and both were paid in full.

The only other question is whether the Adamant Company agreed independently that if the conveyance was made they would cancel their lien. On this point there is for the defendants merely the testimony of Mr. Goddard that there was such an agreement, and the fact that the conveyance was made. Mr. Goddard, however, retracted his statement, and said that such an agreement was not made till after March 8th. His testimony, therefore, would really bear upon the claim presented and withdrawn as to an agreement subsequent to March 8th. The evidence which had been given on that subject was also withdrawn from consideration, wrongfully, as the appellants contend, on the ground that it throws light on the other questions in the case. But, if such evidence were not excluded, it could not relate to any agreement on or prior to March 8th, as pleaded; and, if it did, there would be merely a conflict of testimony, since Mr. Vanderbeek denied that any such agreement was made. As for the fact that the conveyance was actually made, there is evidence that it was made before the signatures to the agreement were all obtained, and an important reason assigned for so conveying the property was to free it from any judgments.

The defendants therefore failed to show that the plaintiff was

bound by an agreement which would set aside the lien, and for this reason, and because the lien was properly filed, the judgment should. be affirmed, with costs.  All concur.